UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                      CRIMINAL ACTION

VERSUS                                         NO. 24-222

RANDY A. FARRELL, SR.                          SECTION "A"
IECI & ASSOCIATES, LLC

## ORDER AND REASONS

The following motions are before the Court: **Motion to Dismiss As Charged Offenses Are Barred By the Statute of Limitations (Rec. Doc. 43)**, and **Motion to Strike Surplus Language From Indictment (Rec. Doc. 44)**, both filed by the defendants, Randy Farrell, Sr. and IECI & Associates, LLC. The Government opposes the motions. (Rec. Doc. 52, Redacted Opposition; Rec. Doc. 65, Opposition). Defendants have filed a reply. (Rec. Doc. 68).

Randy A. Farrell, Sr. and his company IECI & Associates, LLC, an inspection business, were indicted on September 27, 2024 for Conspiracy to Commit Wire Fraud (Count 1), Wire Fraud (Counts 2 through 21), Conspiracy to Commit Honest Services Fraud (Count 22), and Honest Services Fraud (Counts 23, and Counts 24 through 25). (Rec. Doc. 1, Indictment). The Government alleges that Farrell and IECI were involved in fraudulent activities related to their work in the third-party building inspection business for the City of New Orleans Department of Safety and Permits. The Government also describes how Farrell allegedly gave gifts to public officials in order to facilitate his fraudulent activities.

A jury trial is scheduled for August 17, 2026. (Rec. Doc. 81, Order).

Defendants have filed several motions to dismiss, two of which the Court addresses in this Order and Reasons. The first motion pertains to certain portions of the wire fraud conspiracy charged in Count 1. Defendants argue that the challenged portions of Count 1—Paragraphs 11 through 24, (D)(4) and (5), and (D)(6)—are barred by the applicable statute of limitations. All of the challenged portions are found in the Indictment's Part D Manner and Means section which describes how the defendants carried out the alleged wire fraud conspiracy.

The parties agree that 18 U.S.C. § 3282(a) imposes a five-year statute of limitations from the time that the offense is committed. The Indictment is dated September 27, 2024, so five years prior to that date falls on or about September 26, 2019.

**Paragraphs 11 through 24** describe Farrell's efforts in 2018 and 2019 to have "Employee 1" terminated from her position at the Department of Safety and Permits, when she became an impediment to the defendants' alleged fraudulent inspection scheme. The events surrounding Farrell's efforts to have Employee 1 removed describe a bribery aspect of the case, the events of which occurred beyond the five-year statute of limitations. In a nutshell, in late 2018 Farrell asked "Businessman 1" to speak to "Public Official 1" about terminating Employee 1. Farrell allegedly provided items of value, such as tickets to a Saints game, an iPhone, and a meal at a pricey local steakhouse. Ultimately, Public Official 1 twice gave the instruction to "Supervisor 1" to terminate Employee 1 (both occasions in August 2019), which Supervisor 1 refused to do. Ultimately, Supervisor 1 and Employee 1 resigned from the City of New Orleans. What is clear, according to Defendants, is that the object of the alleged bribery

scheme—the termination of Employee 1—was completed outside the five-year statute of limitations. Further, the defendants point out that the iPhone purchase (which Public Official 1 did not accept) did not occur until shortly before Christmas in 2019.

**Paragraphs (D)(4) and (5), and (D)(6)** pertain to unpermitted electrical work that according to the Government demonstrates the defendants' scheme to evade permitting and inspection laws by hiring an unlicensed electrician to perform electrical work while fraudulently using the credentials of a licensed electrician. Paragraphs (D)(4) and (5) pertain to a property on Dryades Street. Paragraph (D)(6) makes similar allegations with respect to a property that Farrell and Businessman 1 co-owned (the Sylvia property). All of the events occurred in 2018 outside of the five-year statute of limitations.

The Count 1 wire fraud conspiracy is alleged to have occurred as early as 2018, and continuing through at least on or about September 20, 2023.[1] (Indictment at 6). The defendants do not dispute that the charged conspiracy itself is not barred by the statute of limitations. Nor do the defendants challenge the timeliness of any of the other *charged* crimes.

None of the foregoing challenged portions of the Indictment are separately charged as substantive wire fraud violations in Counts 2 through 21. And Farrell is not charged with any crime related to anything of value or any bribe that he is alleged to have given to any public official in 2018 or 2019. But the events surrounding Farrell's efforts to have the problematic Employee 1 removed from her job so that he could continue unfettered with his fraudulent permitting scheme, pertain directly to the

---

[1] On September 21, 2023, the Department of Safety and Permits for the City of New Orleans denied Farrell's application to renew his registration as a third-party inspector for IECI. (Indictment at 18 ¶ 44).

charged conspiracy, which itself is timely. And so does the conduct related to the Dryades and Sylvia properties. Given that no substantive criminal charges are premised on anything that occurred prior to September 26, 2019 (five years prior to the Indictment), the Court agrees with the Government's argument in opposition insofar as the statute of limitations does not prevent that uncharged conduct from being alleged in the Indictment as part of the conspiracy. Defendants are attempting to apply the statute of limitations to the removal of Employee 1 and the Dryades/Sylvia properties as if those were separately charged offenses, which they are not. The defendants cite no authority (and the Court has likewise found none) to suggest that the statute of limitations is implicated.[2]

Farrell's Motion to Dismiss As Charged Offenses Are Barred By the Statute of Limitations is therefore DENIED.

Farrell's second motion pertains to what Farrell characterizes as prejudicial "surplus language" in the Indictment. Farrell therefore moves pursuant to Rules 7(c)(1) and (d) of the Federal Rules of Criminal Procedure to have that language stricken from the Indictment.[3] Farrell contends that the Government has inserted unnecessary allegations in the Indictment that may serve only to inflame the jury and prejudice the jurors against him.

---

[2] Farrell's desire to have the events related to the removal of Employee 1 removed from the Indictment, which would then provide the basis for a motion in limine to have the evidence related to those events excluded at trial as being irrelevant, is certainly understandable. Farrell's texts related to his targeting of Employee 1 do not cast him in a very flattering light.

[3] Federal Rule of Criminal Procedure 7(a) states in part that the indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. Fed. R. Crim. Pro. 7(c)(1). Upon the defendant's motion, the court may strike surplusage from the indictment. Fed. R. Crim. Pro. 7(d).

Farrell's challenges (A) and (B) pertain to the alleged bribes to Public Official 1. According to the Indictment, there are four "items of value" allegedly given to Public Official 1: Two tickets to a New Orleans Saints v. Pittsburgh Steelers football game ($875.00 total), seventeen tickets to the January 2019 NFC Championship Game ($5,919.75 total), a lunch at Ruth's Chris Steakhouse ($813.17 total), and a cell phone (Christmas gift) for Public Official 1 (purchased for $1584.59 but returned almost immediately). Farrell complains that the Indictment allocates more than $9,000 of value to these "bribes" when in reality only a fraction of this amount was actually received by Public Official 1.

Specifically, of the seventeen tickets to the NFC Championship Game that Farrell purchased, only two of them were used by Public Official 1 for a total value of only $696.00; the lunch at Ruth's Chris included six persons, two of whom were Farrell and Businessman 1, so the 1/6 of the bill attributable to Public Official 1 would be only $135.00; the cell phone was not only refused by Public Official 1 who returned it immediately, but according to Farrell it was purchased without his authorization by Businessman 1, who apparently had Farrell's credit card in his possession. As for the two Saints tickets to the Pittsburgh Steelers game, Farrell points out that those tickets were for less than desirable seats anyway. Thus, the actual value of the items provided to Public Official 1 was far less than what the Government suggests in the Indictment.

Farrell argues that when the actual value of the items to Public Official 1 is considered it becomes clear that the items are more appropriately attributable to "custom and practice" falling within the norms of the political process as citizens seek dialogue with their public officials. Farrell argues that what the Government is really

trying to do is elevate "innocuous gratuities" to "criminal bribery," and in *Snyder v. United States*, 603 U.S. 1 (2024), the Supreme Court clarified that innocuous gratuities do not constitute criminal bribery.

The Government characterizes the items of value to Public Official 1 as bribes while Farrell characterizes them as innocuous gratuities. It is not for the Court to decide as a matter of law that the items of value were one or the other. Even if the items were mere gratuities, the Government's characterization of them as bribes does not contravene the *Snyder* decision, which dealt with gratuities offered for past official acts. All of the items of value in this case were given leading up to and before the removal of Employee 1 with the exception of the cell phone, which was given a few months later and quickly returned. Another reason that *Snyder* is not implicated is that Farrell has not been charged with bribery related to the "gratuities" provided to Public Official 1. As the Government points out, the removal of Employee 1 is not the sole official act for which Farrell was providing things of value to public officials. The Indictment alleges that the defendants offered things of value to public officials to not only remove Employee 1 but to influence public officials to ensure that the defendants retained their registrations to perform third-party inspections, and to prevent and reduce scrutiny of the fraudulent inspection scheme, for instance by thwarting investigations and inquiries regarding Licensed Electrician 1.[4] (Indictment at 21-22). Farrell's challenges (A) and (B) are denied.

_____

[4] When a City employee prevented Farrell's Licensed Electrician 1 from obtaining new permits under the scheme, the Indictment alleges that Farrell pivoted to using Licensed Electrician 2. (Indictment ¶ 26).

Farrell's challenge (C) pertains to the statement on page 9 of the Indictment in paragraph 7 under the section *Fraudulent Permits and Inspections* that alleges that the defendants submitted "at least hundreds of fraudulent permit applications," even though the Indictment only expressly identifies 10 properties.

The Court is not persuaded that this language should be stricken from the Indictment. Farrell's challenge (C) is denied.

Farrell's challenge (D) pertains to the language in Count 1(A) paragraphs 2-6 and 9-11, which includes references to City regulations that could confuse the jury if it assumes that this constitutes "the law."

Farrell's challenge (D) is denied insofar as Farrell seeks to strike the language from the Indictment at this stage. The Court will ensure that the jury understands that "the law" will be contained only in the Court's instructions to the jury following the presentation of the evidence, and the Court's efforts in this vein may include redacting the Indictment as appropriate to remove any competing explanations of "the law." This assumes of course that the Court allows the jurors to take a copy of the Indictment with them into the jury room during their deliberations.

Farrell's challenge (E) pertains to the language contained in paragraph 15 on page 5 of the Indictment that states that Safety and Permits revoked Farrell's registration even though IECI and others employed by the company remained registered to perform third-party inspections. Farrell complains that the statement provides no context or explanation so it is there just to prejudice him.

The Court is not persuaded that this language should be stricken from the Indictment. Farrell's challenge (E) is denied.

Farrell's Motion to Strike Surplus Language From Indictment is therefore DENIED.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the **Motion to Dismiss As Charged Offenses Are Barred By the Statute of Limitations (Rec. Doc. 43)**, and **Motion to Strike Surplus Language From Indictment (Rec. Doc. 44)**, both filed by the defendants, Randy Farrell, Sr. and IECI & Associates, LLC are **DENIED.**

April 8, 2026

_____
Judge Jay C. Zainey
United States District Court