UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO. 24-222

RANDY A. FARRELL, SR.                             SECTION "A"
IECI & ASSOCIATES, LLC

**ORDER AND REASONS**

The following motion is before the Court: **Motion to Dismiss Counts 1 Through 21, 22 (in part), and 23 of the Indictment (Rec. Doc. 42)** filed by the defendants, Randy Farrell, Sr. and IECI & Associates, LLC. The Government opposes the motion. (Rec. Doc. 52, Redacted Opposition; Rec. Doc. 65, Opposition). Defendants have filed a reply. (Rec. Doc. 59). The Government has filed a sur-reply. (Rec. Doc. 72).

Randy A. Farrell, Sr. and his company IECI & Associates, LLC, an inspection business, were indicted on September 27, 2024 for Conspiracy to Commit Wire Fraud (Count 1), Wire Fraud (Counts 2 through 21), Conspiracy to Commit Honest Services Fraud (Count 22), and Honest Services Fraud (Count 23, and Counts 24 through 25). (Rec. Doc. 1, Indictment). The Government alleges that Farrell and IECI were involved in fraudulent activities related to their work in the third-party building inspection business for the Department of Safety and Permits in the City of New Orleans.

A jury trial is scheduled for August 17, 2026. (Rec. Doc. 81, Order).

Defendants have filed several motions to dismiss, two of which the Court has already denied, (Rec. Doc. 83, Order and Reasons), and the third of which the Court addresses in this Order and Reasons. Many of the issues presented in the instant

motion are purely legal in nature and therefore are particularly well-suited for presentation via a motion to dismiss.[1]

Counts 1 through 21 of the Indictment are all grounded on the crime of wire fraud—specifically, money or property wire fraud—with Counts 22 (in part) and 23 alleging a violation of the wire fraud statute based on the deprivation of honest services related to the receipt of bribes or kickbacks. Defendants argue that taking all facts alleged in the Indictment as true, as a matter of law those facts do not constitute an offense under the federal fraud statute, whether for money or property wire fraud or for deprivation of honest services wire fraud.

The parties' competing contentions are addressed below.

**I.**

Following Hurricane Katrina, the Louisiana Legislature enacted legislation to allow for private individuals with certain credentials to perform building inspections for housing repairs. The City of New Orleans was one municipality that adopted building codes that incorporated the concept of private, third-party inspectors as an integral part of the hurricane recovery effort, which was massive. Even beyond the recovery effort, the City continued to rely heavily on the services of third-party inspectors, essentially outsourcing to private individuals what had been done inhouse by City employees in the past.

The defendant IECI is a third-party inspection service provider that has operated in several municipalities including the City of New Orleans. The defendant Randy Farrell

---

[1] The briefing deadline for the fourth and final motion to dismiss has been extended to Friday, May 1, 2026.

owns and operates IECI. IECI and Farrell have conducted the majority of the third-party inspections in the City of New Orleans, and the City's Safety and Permits Department employees regularly referred contractors to Farrell and IECI to obtain inspections instead of using inhouse Safety and Permits inspectors. (Indictment ¶ 25). The third-party inspection business proved to be a lucrative one for the defendants.

The fraudulent scheme alleged in this case involves permitting and inspections for electrical work performed in Orleans Parish. Under the Code of the City of New Orleans, every electrical contractor who performs electrical work in the City must obtain a license or permit from the City's Department of Safety and Permits. Certain construction work could only be conducted after a licensed contractor applied for and received a permit from the Safety and Permits Department. A licensed electrician was required to be present at all times during the electrical work approved by a permit. Licensed electricians performing electrical work were required to apply for a permit from Safety and Permits and to pay a fee for each permit obtained. No work was to be performed until the permit was received. (Indictment ¶¶ 4-6) (citing ordinances for the City of New Orleans).

In addition to obtaining a permit, at certain points during construction the licensed electrician was required to obtain an inspection, whether by a City inspector or by a third-party inspector such as the defendants. When a third-party inspector performed an electrical inspection, he charged additional fees beyond what had already been paid to the Safety and Permits Department to obtain the work permit. Third-party inspection companies were required to include in the inspection report the name and license

number of the licensed electrician performing the work, as well as photographs of the inspected work. (*Id.* ¶¶ 9-11).

In this criminal case, the Government alleges that Farrell obtained electrical permits in the names and license numbers of licensed electricians, such as licensed Electrician 1, licensed Electrician 2, and licensed Electrician 3, even though these licensed electricians were not actually performing the work. (*Id.* ¶ D(1)). The work was actually performed by unlicensed electricians who paid Farrell to fraudulently obtain for them work permits that they were not qualified to receive. Then when the job was complete, either Farrell or IECI would perform the required inspection and submit a fraudulent inspection report falsely identifying a licensed electrician on the report as having performed the work. (*Id.* ¶ D(6)). Thus, the defendants were paid on the front end to fraudulently obtain a permit, and they were paid later for performing the third-party inspection for the work completed pursuant to the fraudulently obtained permit. The fraudulent inspection report that the defendants caused to be submitted to the City served to conceal the fact that the work had not been performed by the licensed electrician identified in the permit, or any licensed electrician at all for that matter.[2]

The Indictment also alleges how Farrell offered and provided things of value or "bribes" to certain public officials in the City to ensure that the lucrative but fraudulent

---

[2] The Government refers to the persons who actually performed the work as simply "unlicensed electricians" when there is nothing to suggest that the persons that Farrell fraudulently obtained permits for in the alleged scheme had any electrical training or expertise whatsoever. In fact, the opposite appears to be true. The Indictment describes one instance that occurred in 2018 when a homeowner confronted Farrell about using an unlicensed electrician who had installed visibly unsafe electrical connections that were not code compliant. (Indictment ¶ D(5)). The defendants nevertheless caused the property to pass its electrical inspection, and the homeowner had to pay a licensed electrician to fix the unlicensed individual's unsafe work.

permitting and inspection scheme could continue without scrutiny. The Indictment specifically alleges how Farrell used some of those items of value to convince Public Official 1 to terminate Employee 1, a Safety and Permits employee who had become problematic when she noticed irregularities with the defendants' permits and inspections. The City revoked Farrell's registration on January 13, 2023. The City revoked IECI's registration effective February 28, 2025.[3]

## II.

The Indictment alleges that the defendants devised "a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations, and promises, namely, accepting payments to file fraudulent documents with Safety and Permits thereby reducing the value of homeowners' properties by leaving them with properties that contained electrical systems installed and modified by unlicensed electricians whose work was not validly inspected." (Indictment at 18-19).

---

[3] Farrell has filed a civil action against the City's Director of Safety and Permits and the City of New Orleans under 42 U.S.C. § 1983 seeking damages and injunctive relief in conjunction with the revocation of his inspection permits. (Civil Action 25-2197-SSV). In that same lawsuit, Farrell has sued Jefferson Parish and its Director of Building Permits for revoking his inspection permits in that parish. Farrell has been criminally charged with fraudulent activity in Jefferson Parish and those criminal charges remain pending.

**Counts 1 Through 21—Money or Property Wire Fraud[4]**

The substantive crime of wire fraud is defined in relevant part as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining ***money or property*** by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire [] communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 (emphasis added).

The Indictment clearly alleges that the defendants obtained money or property from the scheme by being paid to obtain fraudulent permits, and to perform fraudulent inspections resulting in the submission of fraudulent inspection reports. What is fatally missing according to the Defendants, is that the Indictment fails to allege that the defendants sought to obtain money or property *in the hands of the victim,* which the defendants contend is required under controlling authority. In this case, the money that Farrell and IECI obtained from the alleged scheme came from the payments from the unlicensed electricians with whom they dealt directly, who undisputedly were not victims in the scheme but rather were co-perpetrators of it. And all of the false or fraudulent representations that Farrell and IECI are accused of making were made to the Department of Safety and Permits, not to the victims. No where it is alleged that Farrell and IECI ever dealt directly with any of the alleged victims of the scheme so to the extent that any victim lost money or sustained a decrease in property value as a result of being defrauded, that loss would be attributable to whatever misrepresentations were

---

[4] Count 1 is the wire fraud conspiracy. Counts 2 through 21 are the substantive wire fraud charges.

told to the victims by the unlicensed electricians (or general contractors who hired them) with whom they dealt, not by the defendants.

According to the defendants, because the payments from the unlicensed electricians to Farrell and IECI were not induced by the alleged fraud upon the victims, those payments cannot satisfy the money or property element of the wire fraud statute. And even if the victims' homes sustained a decrease in value, which is speculative, the defendants did not benefit from that decrease in value or obtain any money or property as a result of that particular injury. The defendants argue that what the Indictment alleges is a series of failures to comply with City ordinances governing permitting and inspections, or regulatory lapses, which the Supreme Court has warned cannot be regulated by using the wire fraud statute.

The Government argues in opposition that the defendants' permitting scheme falls squarely within the bounds of the wire fraud statute, including its money and property requirement. Essentially Farrell's scheme deceived homeowners into paying for something that they did not receive, namely licensed and validly permitted electrical work. The Government argues that it matters not that Farrell worked through others to get his share of the victims' money. The Government argues that the money generated by the fraud scheme need not be the same money or property that the victim parts with. In other words, it does not matter that the defendants' profits were different monies from those paid out by the victims. The defendants intended to profit, and they did so from the payments from unlicensed electricians, who were in turn paid by the victims.

The Government goes on to argue that for purposes of the offense of wire fraud, the defendant need not personally make the misrepresentations directly to the victim.

And the victim need not be the party who received the misrepresentations. What this case involves, argues the Government, is the deception of regulatory agencies for the purpose of allowing the victimization of third parties. The Government points out that aiding and abetting liability under criminal law contradicts the narrow reading that the defendants are trying to give to the offense of wire fraud, and the arguments that the defendants raise are even weaker when analyzed through the elements of conspiracy, which do not require an overt act or an actual misrepresentation.

### III.

The Court is persuaded that the defendants' position is contrary to controlling authority, and that the Indictment properly alleges wire fraud offenses of the money or property type in Counts 1 through 21.[5]

At trial, the government's burden in establishing a wire fraud violation against the defendant will be proof that he devised a scheme to defraud, that he used wire communications in that scheme, and that he acted with a specific intent to defraud.[6] *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010) (citing *United States v. Loney*, 959 F.2d 1332, 1337 (5th Cir. 1992)). But the federal fraud offenses, including wire fraud, do not punish conduct that is merely deceitful or dishonest, and they do not criminalize all acts of corruption. *Kelly v. United States*, 590 U.S. 391, 399 (2020). Rather, the controlling jurisprudence establishes that the defendant must have engaged in deception *and* the object of that deception must have been money or property in the

---

[5] Even if the defendants' arguments had merit with respect to the substantive wire fraud counts, those arguments would not succeed as to the Count 1 wire fraud conspiracy.

[6] The defendants do not dispute that the Indictment properly alleges the use of wire communications for purposes of the wire fraud statute.

hands of the victim. *United States v. Greenlaw*, 84 F.4th 325, 344 (5th Cir. 2023) (citing *Cleveland v. United States*, 531 U.S. 12, 19 (2000)); *Kelly*, 590 U.S. at 393. Simply, the object or aim of the scheme or deception must have been to obtain the victim's money. *Kelly*, 590 U.S. at 393; *Kousisis v. United States*, 605 U.S. 114, 121 (2025) (citing *Ciminelli v. United States*, 598 U.S. 306, 312 (2023)). Furthermore, the falsehoods or fraudulent misrepresentations employed in the scheme must have been material. *Greenlaw*, 84 F.4th at 340 (citing *United States v. Scully*, 951 F.3d 656, 671 (5th Cir. 2020)); *McMillan*, 600 F.3d at 447 (citing *United States v. Ratcliff*, 488 F.3d 639, 643-44 (5th Cir. 2007)).

The Indictment properly alleges victims, *i.e.*, property owners, who paid (whether directly or indirectly) money to have a licensed electrician perform work for them but who instead received electrical work performed by some other laborer, who for whatever reason could not become licensed to perform electrical work. As a matter of law, it is immaterial whether any homeowner actually sustained a loss in property value as a result of the scheme because the federal fraud statutes do not require a victim to suffer an actual economic or pecuniary loss from a defendant's scheme. *United States v. Constantinescu*, 157 F.4th 392, 396 (5th Cir. 2025) (citing *Kousisis v. United States*, 145 S. Ct. 1382, 1392 (2023)). And in that same vein, it is immaterial whether the electrical work performed was in fact substandard or whether it was completed to the same standards and with the same level of competence that a licensed electrician would have used. What matters is that the victims of the scheme paid for work by a licensed electrician, yet they did not receive it due to a fraudulent scheme that could not have succeeded if not for Farrell's misrepresentations and falsehoods.

And to be sure, the Indictment properly alleges a surfeit of material misrepresentations and falsehoods by Farrell, albeit not directly to the victims, but to the Safety and Permits Department. Farrell seeks to evade prosecution under the federal fraud statutes by grafting a privity requirement into the law that simply does not exist. In *McMillan*, the defendant unsuccessfully argued that the indictment was invalid because the misrepresentations were made to a state regulatory agency, and therefore they did not implicate any property in the hands of those alleged to be the victims of the scheme. 600 F.3d at 434. The Fifth Circuit explained that precedent made clear that the misrepresentations involved in the scheme need not be made directly to the scheme's victims. *McMillan*, 600 F.3d at 449 (citing *Ratcliff*, 488 F.3d at 645). The victim who loses money or property in a mail fraud scheme need not be the party that was deceived by the defendant's misrepresentations and the misrepresentations need not be made directly to the victim. *Id.* It is irrelevant whether the alleged misrepresentations were made to the regulatory agency or directly to the alleged victims of the scheme. *Id.*

Both *McMillan* and the *Greenlaw* case cited above demonstrate that the defendant's misrepresentations need not be made directly to the victim who parts with property or money. The defendant's misrepresentations can be in regulatory filings not made directly to the victims. *See McMillan*, 600 F.3d at 449 n.40 (discussing indirect representations). The government need not prove that the misrepresentations were made directly to any of the victims. *McMillan*, 600 F.3d at 450 (citing *Ratcliff*, 488 F.3d at 645; *Kreuter v. United States*, 218 F.2d 532, 535 (5th Cir. 1995)).

Similarly, Farrell's argument that the direct source of the money that he obtained from the alleged scheme came from the unlicensed electricians with whom he was in

privity and not directly from the victims themselves is unavailing. The alleged scheme was for Farrell to obtain money from the homeowners through the unlicensed electricians, which was possible only because of the fraudulent permits that Farrell obtained by misrepresentations to the Safey and Permits Department. No unlicensed electrician would have paid Farrell anything but for the money that the victims were paying to the unlicensed electricians. This satisfies the requirement that the object of the fraud be actual money or property in the hands of the victim. *See McMillan*, 600 F.3d at 449. Moreover, the Fifth Circuit has endorsed what other circuits have recognized which is that the deception of regulatory agencies for the purpose of allowing the victimization of third parties is a cognizable fraud offense under federal law. *Id.* at 450.

The motion to dismiss Counts 1 through 21 of the Indictment is denied.

## IV.

Defendants seek dismissal of the substantive wire fraud charge alleged in Count 23, which is grounded on honest services fraud, and the honest services wire fraud conspiracy charged in Count 22, to the extent that it is based on the allegation that Farrell solicited and accepted bribes and kickbacks to apply for and receive permits in the names of licensed electricians, and to submit fraudulent inspection reports.[7] (Indictment at 20 ¶ B(b)). For purposes of these counts, the Government characterizes the payments from the unlicensed electricians to Farrell as "bribes." (Indictment at 8 ¶ D(3)).

---

[7] In the instant motion Farrell is not challenging the aspect of the Count 22 conspiracy grounded on the allegation of offering and paying bribes and kickbacks *to* public officials in order to effectuate the alleged scheme. Similarly, Counts 24 and 25 for honest services wire fraud are not challenged in this motion.

**Counts 22 (in part) and 23—Honest Services Wire Fraud**

> For the purposes of [the crime of wire fraud], the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

18 U.S.C. § 1346.

Farrell argues that he is not a "public employee" or "a person in a position of public authority" for purposes of state criminal law, and therefore as a matter of law, he cannot be charged under federal law for honest services wire fraud.[8] As the Court explains below, this contention is incorrect.

In *Percoco v. United States*, 598 U.S. 319 (2023), the Supreme Court clarified that while the "intangible right of honest services" codified in 18 U.S.C. § 1346 is at its zenith when the Government seeks to prosecute "actual public officials," and while it certainly does not encompass the conduct of *all* private persons, a person "nominally outside public employment" can be subject to criminal prosecution for violating the statute. *See id.* at 329-330. The Supreme Court rejected the proposition that a person nominally outside of public employment can *never* have "the necessary fiduciary duty to the public." *Id.* at 329.

In *Percoco*, the defendant was a highly influential, former public official, who was found *not* to be subject to prosecution for honest services fraud for acts committed during a hiatus from state employment. During this hiatus, the defendant still wielded enormous influence with the Governor of New York but he did so solely as a private individual during the relevant timeframe. The defendant was neither a public employee, a public official, nor an agent of the government—statuses which undisputedly would

---

[8] La. R.S. § 14:118 is Louisiana's public bribery statute, which extends to public officers, public employees, or persons in a position of public authority. *Id.* § 14:118(A)(1)(a).

have subjected him to prosecution for honest services fraud—so the Supreme Court was tasked with defining the contours of honest services fraud when the defendant is a private person—a status which would not automatically exempt him from the statute's reach but could lead to a potential vagueness problem. To avoid a potential vagueness problem under the criminal law, the threshold for triggering criminal prosecution of a private individual under the statute cannot be so ill-defined and indefinite such that ordinary people cannot understand what conduct is prohibited, or such that the Government can prosecute individuals arbitrarily. *Percoco*, 598 U.S. at 331. Such vagueness could potentially deprive a criminal defendant of his due process rights. *Id.* at 330-31. Hence, the Supreme Court alighted upon the necessity of a "fiduciary duty," a concept that had appeared in earlier cases, when the government seeks to prosecute a private individual for honest services fraud. *Id.* (discussing *Skilling v. United States*, 561 U.S. 358 (2010)). Nothing either alleged in Percoco's indictment or proven at his trial even remotely suggested that he owed a fiduciary duty to the government or to the public during the hiatus when the conduct underlying the criminal charges occurred.

What *Percoco* does not address is whether "the necessary fiduciary duty" that the Supreme Court requires must be a formal or classic fiduciary duty, which imposes the highest level of loyalty and honesty such as that owed by financial trustees or guardians, or whether the statute also reaches those private persons who assume a comparable duty of loyalty, trust, or confidence to a governmental entity, and thus to the public. In *United States v. Milovanovic*, the Ninth Circuit sitting en banc court held that a fiduciary duty for the purposes of honest services fraud is not limited to a formal fiduciary relationship but it also extends to a trusting relationship in which one party acts

for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise. 678 F.3d 713, 721 (9th Cir. 2012) (en banc) (citing *Moon v. Phipps*, 411 P.2d 157, 166 (Wash. S. Ct. 1966)).

In *Milovanovic*, the defendant was an independent contractor for a private company that itself contracted to provide translation services to governmental agencies. 678 F.3d at 718. In other words, the defendant himself was neither employed by the government nor did he have any direct contractual or other formal legal relationship with the government. Milovanovic, who was bilingual, was a contract translator for a company that contracted to provide translation services to the State of Washington's department of licensing. Milovanovic devised a scheme to recruit out-of-state Bosnian-speaking individuals to pay him to "translate" during a written exam to obtain commercial drivers' licenses (CDL). Milovanovic would then help the applicant cheat on the exam, and he would fraudulently provide applicants with local addresses to satisfy the state's residency requirement. Milovanovic had as a willing accomplice a CDL third-party tester, who while not an employee of the state, did have a contract with the state. *Milovanovic*, 678 F.3d at 718. Between the two of them, they executed a lucrative scheme to defraud the state.

The pertinent issue on appeal was whether Milovanovic was subject to prosecution for honest services fraud given that he had no direct relationship whatsoever with the state—no contract, no agency, no employment—nothing. The Ninth Circuit, without the benefit of *Percoco*, which came out years later, determined that breach of a fiduciary duty is required for honest services fraud, but that it does not require a formal fiduciary duty; a trust relationship is sufficient. *Id.* at 721. Noting that a

fiduciary is generally defined by a "person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor," the court was not persuaded that either independent contractor status or the absence of privity would foreclose meeting that definition in Milovanovic's case. *Id.* at 722 (citing Black's Law Dictionary (9th ed.)). The state's department of licensing had entrusted Milovanovic and his codefendant to honestly and truthfully administer the written exams and skills tests, and to interpret and certify the results. *Id.* at 724. The defendants knew that the state relied on their fidelity in administering and translating the tests in order to grant CDLs to applicants. *Id.* The statute reached those like Milovanovic who while not a formal fiduciary had assumed a comparable duty of loyalty, trust, and confidence, the material breach of which, with the intent to defraud, deprives the victim of the intangible right to honest services. *Id.* at 728-29.

*Milovanovic* pre-dates *Percoco* by over a decade, but it is completely consistent with the Supreme Court's decision. And *Milovanovic*'s conclusion that "the necessary fiduciary duty" does not require a formal or classic fiduciary duty is persuasive because if the Supreme Court had been looking for a formal or classic fiduciary duty, the *Percoco* opinion would have been much shorter and peremptory in nature given that Percoco was undisputedly not a formal fiduciary.

So turning back to the Indictment in this case, the question is whether the Indictment alleges facts sufficient to establish "the necessary fiduciary duty" that must be present when a private individual is prosecuted for honest services fraud. The

Government has not used the term "fiduciary" in the Indictment,[9] but rather labels the defendants "agents of the City of New Orleans," (Indictment at 4 ¶ 14), and expressly cites the state bribery statute when characterizing Farrell a "public employee" and a "person in a position of public authority" when he was acting as a licensed third-party inspector, (*id.* at 5 ¶ 16). The Government considers these to be deference-demanding factual allegations while the defendants consider them to be legal conclusions lacking in sufficient factual allegations to support them.

The Court declines to determine whether, as a matter of law, the defendants were agents of the City, or "public employees" or "persons in a position of public authority," because contrary to the defendants' position, under federal law they need not have been any of those things for their conduct to be encompassed within the honest services fraud statute. The Court is persuaded that the Indictment "fairly read" alleges that Farrell and IECI, while not formal fiduciaries, had assumed a comparable duty of loyalty, trust, and confidence vis à vis the City when performing third-party inspections for the Safety and Permits Department. The inspections that the defendants were entrusted to perform for remuneration were required by the City's Code. The Safety and Permits Department relied upon the veracity of the inspection reports that the defendants generated and submitted, and the Department trusted the defendants to honestly and truthfully perform the inspections that the City required. Farrell and IECI conducted the majority of the third-party inspections for the City. Safety and Permits employees regularly referred contractors to the defendants to obtain inspections instead

---

[9] In *Milovanovic*, the court noted that the word "fiduciary" was likewise not mentioned in the indictment. 678 F.3d at 728. Instead, the indictment "fairly read" alleged that the defendants had breached an implicit fiduciary duty. *Id.*

of using Safety and Permits own inspectors. The Safety and Permits Department ultimately revoked the defendants' registrations and no longer allowed them to perform inspections for the City when it determined that the defendants had violated the trust and confidence that had been placed in them. The Court is persuaded that the Indictment contains sufficient factual allegations to support the inference that the defendants assumed duties of loyalty, trust, and confidence comparable to that of a fiduciary, thereby satisfying the "necessary fiduciary duty" referenced by the Supreme Court in *Percoco*, the material breach of which, with the intent to defraud, deprives the victim of the intangible right to honest services.

The motion to dismiss Counts 22 (in part) and 23 is denied.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the **Motion to Dismiss Counts 1 Through 21, 22 (in part), and 23 of the Indictment (Rec. Doc. 42)** filed by the defendants, Randy Farrell, Sr. and IECI & Associates, LLC, is **DENIED.**

April 27, 2026

_____
Judge Jay C. Zainey
United States District Court