UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA             CRIMINAL ACTION

VERSUS                          NO. 24-222

RANDY A. FARRELL, SR.          SECTION "A"
IECI & ASSOCIATES, LLC

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss the Indictment and, Alternatively, To Suppress All Statements (Rec. Doc. 33)**, and accompanying supplemental memorandum in support (Rec. Doc. 47 SEALED) filed by the defendants, Randy Farrell, Sr. and IECI & Associates, LLC. The Government opposes the motion. (Rec. Doc. 52, Redacted Opposition; Rec. Doc. 65, Opposition). Defendants have filed two replies. (Rec. Docs. 61 & 68). The Government has filed a sur-reply, (Rec. Doc. 72), as well as a supplemental memorandum with sealed exhibits (Rec. Doc. 78), to which Defendants have filed a response (Rec. Doc. 84), and a **Supplemental Motion for Evidentiary Hearing (Rec. Doc. 85)**, to which the Government has filed a response (Rec. Doc. 87).

Randy A. Farrell, Sr. and his company IECI & Associates, LLC, an inspection business, were indicted on September 27, 2024 for Conspiracy to Commit Wire Fraud (Count 1), Wire Fraud (Counts 2 through 21), Conspiracy to Commit Honest Services Fraud (Count 22), and Honest Services Fraud (Count 23, and Counts 24 through 25). (Rec. Doc. 1, Indictment). The Government alleges that Farrell and IECI were involved

in fraudulent activities related to their work in the third-party building inspection business for the Department of Safety and Permits in the City of New Orleans.

A jury trial is scheduled for August 17, 2026. (Rec. Doc. 81, Order).

Defendants have filed several motions to dismiss, three of which the Court has already denied, (Rec. Doc. 83 & 86, Orders and Reasons). The briefing deadline for the fourth and final motion to dismiss, and the defendants' supplemental motion for evidentiary hearing, closed on Friday, May 1, 2026, rendering both motions ripe.

The issues before the Court today intersect with Farrell's previous criminal tax case No. 21-CR-37, presided over by United States District Judge Jane Triche Milazzo of this district. Farrell contends that certain violations of his rights in conjunction with that case and the investigation leading up to it are egregious and cumulative, and as a result completely undermine the validity of the instant Indictment. According to Farrell, the violations occurred in two parts.

First, Farrell contends that on March 4, 2021, while the criminal tax investigation was ongoing and while he was represented by counsel, two FBI agents appeared at his home unannounced and asked if he would be willing to answer some questions unrelated to the tax investigation. Farrell's attorneys were not contacted prior to the FBI showing up at Farrell's residence. Farrell agreed to be interviewed outside the presence of his attorneys. Farrell argues that using any statements that he made during this interview would violate his Fifth  Amendment right to remain silent and his Sixth Amendment right to counsel because the statements that he made during this uncounseled interview are directly related to the facts of the instant Indictment.

Second, Farrell contends that the Government has breached the plea agreement that was entered in the criminal tax case No. 21-CR-37 when Farrell pleaded guilty to a charge of conspiracy to defraud the United States, (21-CR-37: Rec. Doc. 75, Minute Entry; Rec. Doc. 82, Plea Agreement). As part of his cooperation agreement with the Government, Farrell submitted to two interviews by law enforcement in 2022, and he produced requested documents. And even though the plea agreement assured him that none of his statements or testimony would be used against him, he was nonetheless indicted in this case on new counts of fraud in October 2024. Farrell contends that the statements made during the proffer sessions of 2022 are directly related to the facts of the instant Indictment.

Farrell argues that the compounding and cumulative effect of the violation of his rights at the March 4, 2021 interrogation, and the violation of his plea agreement in conjunction with the 2022 proffers—misconduct by the Government that Farrell characterizes as egregious—require that the Indictment be dismissed. Alternatively, Farrell moves to suppress the March 4, 2021 statement to the FBI and all statements made during the 2022 proffer sessions, along with all of the documents that the Government obtained because of the proffer sessions. Farrell seeks an evidentiary hearing to inquire into the alleged violations of his constitutional rights during the March 2021 interview, and into the use of his 2022 proffer statements in violation of the terms of his plea agreement.

The Government opposes every aspect of the defendants' motions and concedes nothing.

The parties' competing contentions are addressed below.

**I.**

**March 4, 2021 Pre-Indictment FBI Interview**

On March 4, 2021, while Farrell was being investigated for tax crimes, two FBI agents arrived at his residence unannounced and asked to interview him.[1] The visit occurred shortly after a media broadcast delving into alleged contracts between Farrell and other third-party inspectors under FBI investigation. According to the FBI 302 report, the agents told Farrell that they were aware that he was being investigated by the IRS for income tax issues, they knew that he had legal representation that involved the tax investigation, but they were not present to discuss Farrell's taxes, and they did not want Farrell to mention anything related to the tax investigation, or anything that he had discussed with his attorneys. (Rec. Doc. 33-11, SEALED Exhibit 2).

Farrell agreed to the interview, and spoke to the agents at length until Farrell received a phone call from his attorney, who advised him to end the interview. The agents left when Farrell told them that the interview was over. Farrell never suggested that the agents crossed the line by attempting to question him about the criminal tax investigation. The agents only questioned Farrell regarding his inspection business (co-defendant IECI), his processing of permits at the City of New Orleans Department of Safety and Permits, his relationship with unlicensed contractors, his activities with Businessman 1, and other related matters, all of which now form the basis for the current Indictment.

On March 11, 2021, Farrell's attorney sent a letter to the Government to place the United States Attorney's Office on notice that no further interviews of his client

---

[1] At the same time two other FBI agents were conducting an interview of another individual as part of the same investigation into the third-party inspection business.

should be attempted without first going through Farrell's counsel. The attorney warned the Government not to attempt to speak to Farrell again without his attorney present. (Rec. Doc. 33-2, Simmons letter).

Farrell has never suggested that the agents threatened him or coerced him in any manner when they arrived at his house on March 4, 2021. Farrell has never suggested that the agents lied to him or made misrepresentations to him or deceived him in any manner in order to persuade him to speak with them. In fact, it seems as though Farrell was eager to speak with the FBI in the spring of 2021.

According to the lead agent at the March 4, 2021 interview, Farrell tried to keep providing information even after the agents ended the interview at the direction of Farrell's attorney. (Rec. Doc. 78, SEALED Gov. Exhibit M). And following the March 4, 2021 interview, Farrell made several attempts to contact the FBI, and he did so without involving his attorneys. On March 8, 2021, a third-party contacted the lead FBI agent who had been at Farrell's house to advise that Farrell had asked him to reach out and set up a meeting because Farrell had information that he wanted to provide to the FBI. (*Id.*). The agent consulted with the U.S. Attorney's Office, who advised that Farrell would have to contact the FBI directly.

Then on March 16, 2021, which was after Farrell's attorney's letter of March 11, 2021, Farrell sent a text to the lead FBI agent asking about setting up a meeting. (SEALED Gov. Exhibit O). The agent consulted with the U.S. Attorney's Office, who advised that Farrell's attorneys had prohibited contact without counsel present, so to tell Farrell that any meeting would have to include his attorneys. According to the FBI 302,

when the agent told this to Farrell, he insisted that he wanted to meet without his attorneys present and that he had negative information about his attorneys. (*Id.*).

On April 6, 2021, the third-party again contacted the lead agent to provide documents that Farrell had given him to give to the FBI. (SEALED Gov. Exhibit P). The third-party told the agent that Farrell was not comfortable discussing the information that he wanted to provide to the FBI with his attorneys present.

Farrell has not disputed the accuracy of any of the FBI 302s from which the foregoing information was derived. The Government posits that Farrell was endeavoring to dissuade the FBI from pursuing the investigation into his permitting scheme by intentionally sidestepping his lawyers so that he could offer allegations that he thought would either help him or hurt those who could potentially testify against him. The Government contends that the March 4, 2021 interview was just part of that strategy for Farrell, and the fact that Farrell was attempting to meet with the FBI after the interview without his attorneys being involved serves to undermine his contention that his right to counsel was violated on March 4, 2021.

Citing *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977), and *United States v. Caldwell*, 820 F.2d 1395 (5th Cir. 1987), the defendants argue that statements induced by deceit, trickery, or misrepresentation by government agents are subject to suppression without any further showing. Perhaps so, but in this case Farrell has made no showing to suggest that the FBI agents used any sort of deceit, trickery, or misrepresentation in order to obtain his consent to the March 4, 2021 interview. Farrell knew that there had been recent reports in the media regarding his activities, and he knew that the agents came to his home on March 4, 2021, to question him about those

activities as opposed to his tax case. The agents' purpose in being at his house that day was clear and overt. Nothing was hidden or mispresented. The principles derived from *Tweel* and *Caldwell*, both of which involved egregious misconduct by the government, are simply not implicated in this case.

Farrell cites no authority for the contention that the Sixth Amendment right to counsel had attached on March 4, 2021, when the FBI agents interviewed him.[2] Even if the Sixth Amendment right to counsel had attached vis à vis the tax case—a losing proposition given that Farrell was not indicted in the tax case until October 2021, and therefore faced no adverse judicial criminal proceedings as of March 2021—[3]is offense specific. *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (citing *McNeil v. Wisconsin*, 501 U.S. 171 (1991)). The crimes charged in the tax case aren't even factually related to the offenses charged in the instant Indictment.[4] Thus, the status of Farrell's right to counsel in March 2021 with respect to the tax case is completely irrelevant to his right to counsel with respect to the separate offenses charged in the instant Indictment. As far as the

---

[2] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."

[3] An accused's right to counsel does not attach until a prosecution is commenced, meaning the initiation of "adversary judicial criminal proceedings," whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Brown*, 151 F.4th 647, 659 (5th Cir. 2025) (citing *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008)). Even though Farrell had been the subject of a search warrant in 2017 during the tax investigation, this was during the pre-indictment "investigatory phase" of the case so no right to counsel attached. *Id.* (citing *United States v. Diaz*, 941 F.3d 729, 739 (5th Cir. 2019)).

[4] Of course it would not matter even if the crimes were factually related because the Supreme Court has specifically rejected an exception to the "offense specific" requirement of the Sixth Amendment for factually-related offenses. *Cobb*, 532 U.S. at 168.

offenses charged in the instant Indictment are concerned, Farrell had no right to counsel in March 2021 while the FBI was investigating his involvement in the permitting scheme.

Although Farrell has made only passing references to his Fifth Amendment rights being violated on March 4, 2021, as a matter of law his right against compelled self-incrimination was not violated.[5] The interview at his home on March 4, 2021, was non-custodial, and involved no compulsion of any kind. *See United States v. Wright*, 777 F.3d 769, 773-74 (5th Cir. 2015) (citing *Miranda v. Arizona*, 384 U.S. 436 1966)).

Finally, Farrell maintains that the FBI agents violated Rule 4.2 of the Rules of Professional Conduct, entitled Communication With Persons Represented By Counsel, when they approached him on March 4, 2021 and asked to interview him, even though they knew that he had counsel in the tax case. Farrell cites no authority to suggest that a violation of this Rule would result in the suppression of evidence in a federal criminal prosecution, particularly where it is clear that no Sixth Amendment violation has occurred.

In sum, Farrell has offered nothing to dispute anything contained in the FBI 302 reports concerning the March 4, 2021 interview. Those reports establish that Farrell voluntarily and willingly spoke with the FBI agents on March 4, 2021, and voluntarily answered their questions. Farrell has not pointed to a single material factual dispute surrounding the March 4, 2021 interview that would trigger an evidentiary hearing. The motion to suppress the statements made on March 4, 2021 is therefore denied.

---

[5] The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ."

**II.**

**2022 Proffers Pursuant to Plea/Cooperation Agreement**

At the outset, Farrell has not disputed the Government's contention that IECI has

no standing to invoke the terms of the plea agreement in order to challenge the use of

Farrell's 2022 proffer statements. Therefore, the aspect of the pending motions that

challenges in the 2022 proffers based on the plea agreement pertains to Farrell alone.

The cooperation agreement made part of Farrell's plea agreement in the criminal

tax case (21-CR-37) states:

> This plea agreement is predicated upon the fact that the defendant agrees to submit to interviews whenever and wherever requested by law enforcement authorities. The defendant understands that he must be completely truthful . . . The defendant further agrees to immediately advise the government as to any person defendant believes to be violating the law and defendant agrees to assist the government with regard to the investigation and prosecution of criminal conduct of any other person.
>
> . . . .
>
> . . . [T]he government also agrees that any statements or testimony made later by the defendant pursuant to questions asked by federal agents or prosecutors as a result of this agreement, other than false statements, will not be used against the defendant except for the purpose of impeachment. However, any such statements or testimony given by the defendant can be used as leads or for any other reason against other persons.
>
> The defendant fully understands that should the defendant commit any further crimes or ***should it be determined that he has given false, incomplete, or misleading testimony or information to federal agents, and/or prosecutors*** or should he otherwise violate any provision of this Agreement, ***the Agreement is null and void.*** The defendant shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including but not limited to perjury and obstruction of justice. ***Further, the defendant's statements and testimony can be used to prove those offenses . . . .***

(Rec. Doc. 33-4, Plea Agreement w/ Cooperation Agreement) (emphasis added).

Farrell participated in two proffer sessions at the U.S. Attorney's Office in 2022. On June 2, 2022, Farrell was interviewed by FBI agents and several assistant United States attorneys in an interview that focused on Public Official 1 and Businessman 1. At the conclusion of that proffer session counsel for the Government asked Farrell's counsel to provide certain documentation mentioned by Farrell at the session, specifically documentation of a lunch with Public Official 1 at Ruth's Chris on August 14, 2019, and credit card documentation regarding the purchase of a cell phone for Public Official 1. Farrell's counsel complied with the request. The second proffer session took place on September 22, 2022. Farrell contends, and the FBI 302 reports confirm, that he was interviewed by the FBI and several assistant United States attorneys about the same matters now referenced in the instant Indictment.

Shortly before Farrell's sentencing in the tax case, the Government sent a letter to Judge Milazzo regarding Farrell's cooperation pursuant to his plea agreement. The Government advised that it would not be seeking a sentencing reduction on Farrell's behalf pursuant to Section 5K. The letter also states:

> Farrell met with the government on June 2 and September 22, 2022, regarding an ongoing investigation, and Farrell produced documents to the government that were helpful in the ongoing investigation. ***Farrell's statements at the proffers did not materially contradict*** or add to ***the information contained in the documents that the government previously obtained.***

(Rec. Doc. 33-13, SEALED) (emphasis added).

Farrell points out that the 2022 proffer sessions include extensive debriefing of matters related to the instant Indictment. Farrell contends that the Government has taken advantage of his cooperation by using it to build a subsequent criminal case against him. Farrell's position is that the Government has breached the terms of the

plea agreement by using the statements and evidence produced at the 2022 proffers against him in this criminal prosecution. Farrell contends that egregious government misconduct has occurred for which the only remedy is dismissal of the Indictment, or at the very least suppression of the two post-plea interviews from 2022. Farrell argues that an evidentiary hearing is necessary because the Government cannot just unilaterally declare that Farrell breached the plea agreement. There must be a judicial determination to that effect.

As discussed in greater detail below, the Government's position is that Farrell breached the plea agreement by giving misleading, at times false, and materially incomplete statements in his post-plea interviews. The Government contends that notwithstanding Farrell's repeated demands for an evidentiary hearing, Farrell has identified no contested and legally relevant facts necessary to resolve the underlying motion so as to warrant an evidentiary hearing.

Nonprosecution agreements, like plea bargains, are contractual in nature, and are therefore interpreted in accordance with general principles of contract law. *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998) (citing *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998); *United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994); *United States v. Finch*, 964 F.2d 571, 574 (6th Cir. 1992); *United States v. Brown*, 801 F.2d 352, 354 (8th Cir. 1986)). Under these principles, if a defendant lives up to his end of the bargain, the government is bound to perform its promises. *Id.* 835-36 (citing *United States v. Tilley*, 964 F.2d 66, 70 (1st Cir. 1992)). If a defendant "materially breaches" his commitments under the agreement, however, the government

can be released from its reciprocal obligations. *Id.* at 836 (citing *Ballis*, 28 F.3d at 1409; *Tilley*, 964 F.2d at 70; *United States v. Crawford*, 20 F.3d 933, 935 (8th Cir. 1994)).

When the government believes that a defendant has breached the terms of a nonprosecution agreement and wishes to be relieved of performing its part of the bargain, due process prevents the government from making this determination and nullifying the agreement unilaterally. *Castaneda,* 162 F.3d at 836 (citing *United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir. 1986); *United States v. Tarrant*, 730 F. Supp. 30, 32 (N.D. Tex. 1990)). Instead, the government must prove to the court by a preponderance of the evidence that (1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission. *Id.* (citing *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988); *Tarrant*, 730 F. Supp. at 32). If the pleadings show no factual dispute, however, the court may determine breach as a matter of law. *Id.* (citing *Packwood*, 848 F.2d at 1011; *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981)).

In judging materiality the court will examine whether the omissions are insignificant, inadvertent, or duplicative. *See Castaneda*, 162 F.3d at 837-38. A breach is not material unless the non-breaching party is deprived of the benefit of the bargain. *Id.* at 837 (citing *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 630 (5th Cir. 1997)). The less the non-breaching party is deprived of the benefit of the bargain the less likely the breach will be considered material. *Id.*

The Government acknowledges that it must prove the *Castaneda* factors to the Court by a preponderance of the evidence. If the Government fails to do so, and the Court finds that Farrell's post-plea statements are still protected under the plea

agreement, then the next step before suppression of the evidence would be a *Kastigar* hearing, at which the Government would be given the opportunity to establish that its other evidence was not derived from any immunized statements made at the 2022 proffer sessions. *See United States v. Kastigar*, 406 U.S. 441 (1972).

The Government's case against Farrell for dishonest cooperation and breach of the plea agreement's terms is as follows: By the time of the first post-plea interview in 2022, the Government already had many of the text messages later described in the Indictment, and the Government confronted Farrell with those text messages at his post-plea interviews. Although the Government had advised Judge Milazzo on July 14, 2023—which was nearly a year after the interviews took place and shortly prior to the July 19, 2023 sentencing hearing—that Farrell "did not materially contradict" the information contained in the documents that the Government had previously obtained, the Government later learned that Farrell had provided statements that were false and misleading, and had omitted key information about the scope of his scheme and the identities and roles of many of his coconspirators. The Government points to three aspects of the case in support of this contention.[6]

The first two aspects involve Licensed Electrician 1, who prior to August 28, 2019 held a license with the New Orleans Department of Safety and Permits. Licensed Electrician 1's license with the City was suspended when Employee 1 (who Farrell targeted for termination) helped investigators with the City of New Orleans Office of the Inspector General (NO-OIG) expose Farrell's practice of using Licensed Electrician 1's license to obtain fraudulent permits for unlicensed electricians, whose work IECI would

---

[6] The Court's Order and Reasons denying Defendants' prior Motion to Dismiss (Rec. Doc. 86) contains a more detailed factual background regarding the charges in the Indictment.

later inspect and pass. When Licensed Electrician 1 was interviewed by federal investigators in 2021, he was not aware of any other licensed electricians whose licenses Farrell had used to obtain permits for unlicensed contractors. (Rec. Doc. 52 SEALED Exhibit G).

Farrell was questioned by the Government about Licensed Electrician 1 when Farrell was interviewed in 2022 about the permitting scheme. Farrell omitted telling investigators that once Licensed Electrician 1 was caught and suspended by the City in August 2019, Farrell started using the credentials of Licensed Electrician 2 and Licensed Electrician 3 to continue with the fraudulent permitting scheme. The Government maintains that Farrell began to mask the source of the funds used to pay for the fraudulent permits so that City employees would not recognize that IECI was the source of the funds. The Government had to use a grand jury subpoena to obtain the bank records that revealed that IECI was in fact behind the payments. The Government has produced under seal evidence to support the contentions regarding Farrell's pivot to Licensed Electrician 2, and 3. Farrell has neither disputed this evidence nor disputed the Government's assertion that he did not tell investigators in 2022 about the continuation of the scheme with Licensed Electrician 1 and Licensed Electrician 2 after Licensed Electrician 1 was caught and suspended.

At the September 22, 2022 interview investigators showed Farrell a text exchange that he had with Businessman 1 in September 2019, which implied that the investigation/suspension of Licensed Electrician 1 was to retaliate against people who had spoken out against Employee 1. (Rec. Doc. 52 SEALED Exhibit G). Farrell told investigators that he did not remember why he sent the text, and when shown an email

dated September 4, 2019 that purported to be from Licensed Electrician 1 to the Department of Safety and Permits complaining about his retaliatory suspension, Farrell's response to that email was that Licensed Electrician 1 felt that the suspension of his license was a reprisal from Employee 1 and the NO-OIG. (Rec. Doc. 33-15 SEALED).

Licensed Electrician 1 was interviewed by federal investigators on multiple occasions and on January 16, 2024, he was asked to recount the events leading up to the revocation of his license in 2019. Licensed Electrician 1 explained that when the NO-OIG contacted him regarding the excessive number of permits being issued in his name and asked to meet with him about that, Farrell learned about the phone call and summoned Licensed Electrician 1 to his office where he began to coach him on how to properly respond to the inquiry. Farrell presented Licensed Electrician 1 with a stack of permits and after-the-fact contracts for him to sign. Farrell presented Licensed Electrician 1 with a typed letter written for his signature written to the NO-OIG investigator (and copied to the mayor and the Director of Safety and Permits) accusing Employee 1 of misconduct. Licensed Electrician 1 signed the letter as Farrell had directed him to do. (Rec. Doc. 52 SEALED Exhibit G). Licensed Electrician 1 was shown the September 4, 2019 email that purported to be from him but he told the interviewing agents that he did not write it. (Rec. Doc. 52 SEALED Exhibit G). The Government's theory is that Farrell was orchestrating false accusations against Employee 1 and the investigator from NO-OIG in order to deflect an investigation by the City into Licensed Electrician 1, which would have risked exposing Farrell's whole scheme. Farrell has neither disputed what Licensed Electrician 1 told the FBI, nor has

he disputed the Government's assertion that he himself did not tell investigators in 2022 about the fraudulent campaign that he ran in late 2019 to coverup the scheme.

The third aspect of the case that the Government contends that Farrell did not divulge when being interviewed in 2022 pertains to its scope and duration. The Government points out that Farrell did not reveal to them the Jefferson Parish version of his permitting scheme, and that he falsely told investigators that he had stopped the permitting scheme around 2019 or 2020. Investigators later discovered evidence that the scheme was continuing through at least late 2021. Farrell has neither disputed the Government's evidence supporting the Jefferson Parish version of the scheme and the duration of the scheme, nor the Government's assertion about what he told or failed to tell investigators at his 2022 interviews.[7]

The Court is persuaded that the Government has established by a preponderance of the evidence the foregoing allegations, which demonstrate that Farrell provided false, misleading, and incomplete information to federal authorities at his 2022 post-plea interviews. The Court is also persuaded that the false, misleading, and incomplete information constituted a material breach. In addition to making false statements, Farrell's omissions were not insignificant nor inadvertent. Farrell has not demonstrated that there are any factual issues to resolve that require a hearing. Farrell has forfeited the immunity conferred by the plea agreement.

---

[7] Farrell has devoted a significant amount of briefing to the puzzling contention that the "material breach" at issue is simply a disagreement between him and the Government over whether the items to Public Official 1 are properly characterized as bribes. Farrell contends that his refusal to accept the Government's theory as to bribery cannot form the basis for a material breach of the plea agreement. Although correct, the Court finds the contention puzzling because the Government makes no mention whatsoever of the bribery allegations in conjunction with whether Farrell breached the plea agreement.

Finally, Farrell has argued that his statements from the 2022 interviews should be suppressed under Federal Rule of Evidence 410, which renders statements made during pleas discussions inadmissible against the defendant in a criminal case if the discussions did not result in a guilty plea. Fed. R. Evid. 410(a)(4). The 2022 proffers were not plea negotiations encompassed within the Rule. The 2022 interviews were post-plea statements made after Farrell had already pleaded guilty and pursuant to a cooperation agreement. The Court is persuaded that Rule 410 has no bearing on Farrell's statements made in 2022 after he negotiated a plea agreement in the tax case.

In sum, Farrell breached his plea/cooperation agreement in criminal tax case No. 21-CR-37 through dishonest cooperation and has forfeited the immunity conferred by the agreement The Government is permitted to use the statements and evidence obtained at the 2022 interviews against Farrell and IECI in this criminal case.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the **Motion to Dismiss the Indictment and, Alternatively, To Suppress All Statements (Rec. Doc. 33)**, and the **Supplemental Motion for Evidentiary Hearing (Rec. Doc. 85)** are **DENIED**.

May 21, 2026

_____

Judge Jay C Zainey
United States District Court